The next case on our call this morning is Agenda Number 10, Case Number 105-018, Board of Education, Joliet Township v. Board of Education, Lincoln Way. Mr. Hussack? Thank you, Mr. Chief Justice. May it please the Court, I'm Assistant Attorney General Richard Hussack, Counsel for the Illinois State Board of Education, and I urge the Court to reverse the holding of the appellate court in this case that declared Section 7-2B of the Illinois School Code unconstitutional. That provision limits the evidence that the State Board of Education may hear and the issues that it may decide in school redistricting proceedings under the specific provisions of Section 7.2. The holding of the appellate court in this case created a direct conflict with the contrary decision of the Illinois Appellate Court First District in the Rich Township case, which held that Federal law claims like those asserted by the Appalee in this case, Joliet High School District 204, are properly developed factually and decided by the Circuit Court, not by the State Board of Education. So the issue here is not whether claims like District 204 asserts under Federal law shall be implemented by the State and whether Federal law shall be enforced. The question is who has the responsibility for adjudicating the merits of those Federal law claims. In the First District, the Court held that it is the Circuit Court that does so and in this case, the Third District struck down the provision of the School Code that says the State Board of Education cannot do so and it remanded this action and ordered the State Board of Education, contrary to the terms of Section 7-2B, to develop a factual record and decide the merits of the Federal law claim, which was asserted as a challenge to the validity of the redistricting petition that had been filed before it. There was no need for the Appellate Court to reach the constitutional question in this case and I allude to the well-recognized and established principle that constitutional questions should be decided only when they are indispensably necessary to a resolution of the case and only when there is no other way to resolve the matter and that is as a last resort. The constitutional question could have been avoided and should have been avoided based upon a proper statutory interpretation of the relevant provisions of the School Code and of the Administrative Review Law. If under the interpretation that the ISBE advocates in this case, the issues under Federal law are decided by the Circuit Courts rather than by the Board of Education, then the Federal preemption question goes away. There will be no impediment to the fulfillment of Federal law. That Federal law will be implemented in Illinois as it should be, but that implementation shall be done as we believe the Illinois Legislature directed by the Circuit Courts rather than by the State Board of Education. Mr. Hussack, this is an Administrative Review by the Trial Court of the ISBE's decision, is that correct? It includes an Administrative Review component. What do you mean by that? There is no doubt that decisions by the State Board of Education that grant a petition to the Administrative Review Law that authorize the losing party to file an action for Administrative Review that falls within the Circuit Court's statutory jurisdiction to review the decision. And it is the ISBE's position that that is not the entirety of the Circuit Court's jurisdiction, that the Circuit Court also has original jurisdiction over the type of Federal law claim that is asserted here by District 204. But in normal Administrative Review cases, the Trial Court would be limited to the record that was developed by the Administrative Body? That is correct. Are there other situations where the Trial Court has the authority to develop a separate record on an Administrative Review? There are other situations, I'm sorry, on Administrative Review, outside of the limited Administrative Review context, there are certain situations, but this case doesn't implicate those. Those have to do with exhaustion of Administrative Remedies and that type of thing. I am not aware of any other statute like this one that says that the agency cannot make a factual record on which a party could base a claim contesting the ultimate agency action or decision. And what I would want to emphasize is that although the Appellate Court focused on the provision in the Administrative Review Law, Section 3-110, that says that you cannot go the Administrative Review Law provides, that same section also says that the scope of review of the Circuit Court extends to all questions of law and fact presented by the Administrative Record. So what that provision does is it both limits and grants at the same time. It grants jurisdiction to review all questions presented by the record, but by the same token, it excludes from the statutory Administrative Review jurisdiction those questions that cannot be presented by the record. And that is where Section 7-2B kicks in because it says that the agency can't hear any evidence or accept any evidence on claims like the one that District 204 asserts here. If a party is statutorily prohibited and the agency is statutorily prohibited from offering evidence or receiving evidence on certain issues, then claims based upon that evidence cannot be ones presented by the record. And so Section 3-110 that the Appellate Court focused on, ironically, supports the ISBE's position that the federal law civil rights claims here that the Joliet High School District wanted to assert are not ones presented by the Administrative Record and so fall outside the Administrative Review jurisdiction of the Circuit Courts. And that doesn't mean that there's no judicial authority to consider those claims. What it means is that the catch-all fallback category of Circuit Court jurisdiction is its original jurisdiction granted by the Illinois Constitution. And there is, you know, the ISBA submits that that really is the proper place to have claims of this variety adjudicated. That was the choice made by the legislature when you put these two statutory provisions together side by side. District 204 doesn't dispute that if that's a correct interpretation, the federal preemption question, the constitutional issue, goes away. Nor does it even dispute that the Circuit Courts are better equipped to implement these federal laws because of the aspects of the original jurisdiction of Circuit Courts. They have better expertise in interpreting statutes, applying constitutional law. They have the power of discovery. So there are those additional reasons beyond the plain language of the two statutory provisions that support the interpretation that the ISBE advocates here. So it's your position that there would be, they should operate almost simultaneously, or could, with proceedings by the ISBE under the school code on the detachment question. And then it would or could be stayed pending the outcome of a determination in the Circuit Court on the federal claim? Well, the filing of the, I think yes, the filing of the administrative review action itself operates as a stay. But the Circuit Courts, I believe, also have sort of their inherent equitable power to grant stays of administrative decisions pending the adjudication of claims outside their statutory jurisdiction. And I believe this would be a case in which the Circuit Court could exercise its discretion subject to appellate review, I think under Rule 305, as to whether it should stay the administrative review proceeding beyond just an adjudication of the administrative review aspects of the case in light of a weighing of the potential merits and severity of harm and balance of the hardships with respect to the federal civil rights law claims. So if a party, in this case the district, disagrees with the, because of the racial factor, the change in the students, even though they would agree that the ISBE was right in finding that the territory to be detached and annexed to the other district is less than 5% of equalized assessed valuation, the three requirements, I believe, they would have to appeal that as being a wrong decision, or what would they do? Would they just start a new action in the final court? If they don't have any basis to challenge the sufficiency of the factual findings regarding the three statutory criteria under Section 7.2.B, they would have to file an independent action whether they'd have to do so in addition to seeking administrative review generally is not a question I can immediately answer. The answer isn't immediately obvious to me. But I think that the rule that an administrative decision, if not reviewed under the administrative review law, then becomes binding, and the preclusive scope that attaches to a binding decision that isn't challenged under that statute, in this category of cases or in this court's original jurisdiction, to challenge the decision as violating federal civil rights laws. Did that answer your question? And I think what happened here is that although the third district cited the Rich Township case for another point of law, which is that agencies can't declare the statutes they operate under unconstitutional, it didn't mention the separate critical holding of that case, which is that it's the circuit courts that develop the facts and decide the merits of these issues involving alleged violations of federal civil rights laws. And I think it made an incorrect assumption that there were only two options here, that the only options were between striking down Section 7.2.B, what I've referred to as the scope limitation clause, that limits what the ISBE can hear and decide, and having no place at all in Illinois to decide the merits of these federal law claims. And that was not a correct set of alternatives. It was a false choice because there was the third option, which is the statutory interpretation one, which avoided the preemption issue and avoided then the constitutional question under the federal supremacy clause. And that third option was interpreting the statutes in a way that excluded this federal law claim or federal law claims of this variety from the statutory administrative review jurisdiction of the circuit court and thus put it into the original jurisdiction of the circuit court where the court would start finding, develop a factual record, and decide the merits of those claims. Even if, though, the third district were correct that there was an irreconcilable conflict between Section 3.1.10 and 7.2.B, the only alternative was not to strike down 7.2.B. The alternative was to look at which of those two statutes should take precedence. And as we've indicated, the Section 7.2.B provision is more recent. It's more specific. So even if it were just a matter of resolving a conflict between two statutes, which we don't believe there is, there was another alternative than the one that the appellate court adopted here and, again, avoided the constitutional question of violation of federal law. Returning momentarily to the question about the scope of administrative review generally, I don't want to suggest that every time somebody has a federal law theory for overturning administrative decision, you know, the agency violated my procedural due process rights or something, that that entitles the party to go outside the scope of the administrative review law. The Texaco City's case establishes in carpet land by this court recently reiterated that it is incumbent upon a party to make the record that they can in support of any constitutional challenges or federal law questions that they may have to contest a final administrative agency decision and that those then are questions, even if the administrative agency itself can't decide them, that the circuit court would decide within the scope of its administrative review powers. But those are issues where the record can include the factual basis for those federal law challenges or constitutional questions. We have a unique situation. I'm not aware of any other provision in Illinois that has this unusual aspect to it, which categorically prohibits the agency from making a record that would support the factual basis for a federal law challenge to the validity of an agency decision. And it is that unique aspect of this provision that puts the claims, the federal law claims here, outside the scope of review of the administrative review law under Section 3.1.10 because they are not then questions that can be presented by that record. There are other reasons for adopting that view of this interplay between Section 3.1.10 and Section 7.2.B beyond what I consider to be the plain language of those statutes. And that is, those are, among other things, that agencies are creatures of statute. They have only those powers that the General Assembly gives them. In this case, the General Assembly could not have been more emphatic. It said that the State Board of Education now under the new provision of the statute, the regional boards of school trustees, have no authority or discretion to hear any evidence or consider any other issues besides the three statutory criteria specified in Section 7.2.B for these detachment and annexation cases. So what we would be doing is disrespecting the legislative choice. And it's prerogative to determine the scope of an agency's powers by striking down that provision and forcing that agency to exercise authority that the General Assembly said it does not have. And I can't say that there's no precedent for a court ordering an agency to exercise authority that the General Assembly said it cannot have. But certainly this is not a case that would warrant invoking that extraordinary power. In addition, the Supremacy Clause, which was the basis for the appellate court's decision in this case, creates a presumption that federal law will be implemented by courts of general jurisdiction, not agencies. And in this case, that appears to be clearly the preference that the legislature followed and the presumption that it followed when it said that these, that the State Board of Education shall not be looking at this type of question or deciding these issues or even hearing any evidence related to them. And again, as I think I've elaborated somewhat in my briefs, having circuit courts decide these questions, sometimes involving difficult problems of alleged discrimination, including alleged discrimination by the agency itself, is problematic. These are sometimes difficult cases. They are difficult questions to resolve. And the circuit courts are better equipped to handle them. I don't think we want a situation in which the agency is responsible for deciding whether it's guilty itself of violating federal anti-discrimination laws. That's probably not where we want to propose authority for deciding these very important civil rights questions. Again, the issue is not whether federal law shall be implemented. The question is where that implementation shall take place. And our position is that the legislature in this case has legitimately and permissibly designated the circuit courts as the place to decide those issues by saying that the agency cannot decide them, can't even make a record related to them. And the result of that is that those decisions are outside administrative review jurisdiction and are part of the circuit court's original jurisdiction. What would the order that you would like us to issue in this case look like? I would ask that you reverse the decision of the appellate court with respect to the question of the State Board of Education's responsibility. You would reverse and say that the Section 7.2.B was a constitutional question that the declaring it unconstitutional was wrong because as a matter of statutory interpretation, you didn't have to reach the constitutionality of the statute by concluding that these issues should be decided. If we were to decide that the constitutional question needed to be resolved, remand it then to the circuit court for that purpose? Yeah, we're not trying to cut District 204 off and say that because they didn't present any evidence in the circuit court, it's too late, they don't get a second chance. I think even Rich Township, in that case, there was a similar situation. They said, okay, there was a misunderstanding here. Let's give the parties the shot to present the evidence the way they should. So we would ask that the case be remanded ultimately to the circuit court, not to the agency, for resolution of the merits of those underlying federal law claims. Thank you. Thank you, Mr. Hussack. Mr. Rathbun? May it please the Court, I'm Tim Rathbun. I'm a lawyer from Joliet. I think my opponent hit the issue right on the head and he brought to the Court's attention the most compelling problem, and that is that in the State of Illinois, there's not a single administrative review statute which limits the evidence which can be presented before the administrative body such as Section 72B. I think the problem we have in this case is not the appellate court's decision, the problem is the statute itself. And I take issue with my opponent who would say that you might be disrespectful to the General Assembly when you critique its statute. I think when the General Assembly engages in mischief like they have in this case, I think it's the affirmative duty of this Court to declare it unconstitutional for the very reasons that are mentioned by Judge McDade and I think we point out in our brief. If you look at the history of the school code, the way when parties don't agree on changing school boundaries was always covered until 1991 by Section 72 of the school code. And that was a relatively simple statute. You want to change a boundary, you file a petition with the Regional Board of School Trustees, they hear evidence on what is called the best interests of the students involved, and they render a decision. Now, something must have been wrong in 1991 when the legislature decided that you should not consider the best interests of the children involved when you're going to change school boundaries. But for whatever reason, they did. And what they've done is created a statute where parents, children and school districts are high bound when they appear before either the State Board of Education or the school districts on a case where they're trying to change the boundaries in this case. While we agree with Judge McDade that something has to be done in this case where you have this conflict between the state statute and the federal statute, we accept her decision as a second best decision because we have consistently say, throw this statute out. As my opponent says, it's the only one in Illinois that puts you in a strange place. I'm a trial lawyer. I just go to court. I read the rules and I see what do the rules say and I try to follow them. The law is meant so that we can know what we're doing on an everyday basis. Okay, I go to court and I see the administrative review law, and I knew this before I even was a lawyer, that if I don't put the evidence on before administrative review, I can't argue that before the circuit court. Everyone knows that. If I called my first witness in the circuit court of Will County, they'd throw me out. The same problem you have here. I go before the administrative review body, in this case the SBOE, and I say to the SBOE, I'd like to present my evidence. You can't. The statute's clear. We are a creature of limited by what the General Assembly did, and as being limited by what the General Assembly did, you can't put on evidence. So I go up to the circuit court. I want to call my first witness. The judge turns to me and he says, Counsel, the General Assembly made a decision, and the General Assembly's decision was you don't present evidence in the circuit court. Is it your position, Counsel, that you are precluded from ever litigating the discrimination issue? I believe that if this court were to reverse the decision entirely, in other words, if you were to say, you just lose, I think I probably would be. The problem is that remanding the case, as the State Board of Education suggests, to the circuit court instead of the regional, I'm sorry, instead of the state superintendent, still creates the exact same problem. This court, which I think you're entitled to do, and I don't think Justice McDade was necessarily wrong, is allowed to say, General Assembly, you have made a illogical statutory scheme. And that's the problem. Administrative review makes sense to me when the way it's set up, if your administrative body gets to hear the evidence and the judge gets to consider it on administrative review. Liquor Control Commission, real simple. You call your witnesses, they heard, you make a record. The zoning cases, you've heard many cases like that. Zoning cases, you put your evidence on so that the trial court isn't to be creating another exception to what the General Assembly said. Well, they can't have it both ways. They can't say the administrative body is limited into what it hears, and then at the same time in the administrative review law, say that the courts are limited in what they're doing. And that's why I think the easiest thing to do, the easiest thing to do is to throw the statute out and say it is unconstitutional. It doesn't allow hearing these claims. But would you be prohibited if we said, if we upheld the statute, would you be prohibited from filing a lawsuit in the circuit court or in the federal district court to address the 1703 issue? I don't know, Your Honor. I think that I'm fearful what would happen, because I've seen it happen too often. I could see very easily, let's say I find a declaratory judgment suit of some type of nature. Then the question gets to be, what is the effect of the SPOE's ruling? Have the boundaries already been changed? Well, unlike the liquor control law, there's no provision for staying pending judicial proceedings, the effect of this disconnection. So the disconnection has occurred. Secondly, you're almost guaranteed, if not the state board, what about the petitioners who aren't even before you here? What if those petitioners come in and say, wait, they had their chance. This is a case where the legislature has decided that disputes regarding school district boundaries shall be decided only by the state board of education or regional board of school trustees. So you're saying that this legislation by the state intentionally precluded anybody from raising any civil rights issues? Yes, Your Honor, I do. And I would even go a little step farther and suggest that's why the statute was created in the first place. When your clerk plugs into his computer or her computer 7-2-B of the school code, and you look at the types of cases that have addressed it, and locally and in the federal courts, the word race comes up each and every time. I have been involved in half of those. I've seen what happens. The only possible potential purpose, you can take two cynical views. Cynical view number one is the legislature doesn't want anyone to consider the best interests of the students in deciding a school disconnection. Cynical view number two is that why is it in all these cases there's a question of race involved? The simple matter is to bring it out into the open in a forum where somebody can present some evidence. And if I'm wrong, I'll lose. And if I'm right, I'll win. But you can't have it this way without, in the words of Justice McDade, she says suspend by this particular provision, 7-2-B would be suspended by preemption. That is an alternative. I find that a less effective alternative than saying this statute has no sense. I realize that's not a constitutional ruling, but it really is. It makes no sense. When there isn't any other administrative decision where you tie the litigants' hands behind their backs before they go in, and then you go into the circuit court and you say to them, well, Mr. Litigant, in this case, you didn't raise it, so you lose. It shouldn't be this illogical. It shouldn't be a dog chasing its tail. It should be a simple system so that simple people like myself can see what it is, file your petition, get fairly heard, and have the situation decided. And it just can be nothing but, I hate to say it, improper purpose. Maybe they meant really well, but sometimes the best of intentions result in something draconian. And in this case, it does. It really does. Another interesting question, and my opponent properly cites a Carpetland case. And the Carpetland case says something which is even more interesting. You have to, in the Carpetland case, you have to give the facts at the administrative body, but the administrative body can't declare the law unconstitutional. Well, that actually is the best you can do. You develop your facts under Carpetland, and then you get into the circuit court, and the circuit court can then exercise the jurisdiction that a judge can, and he can declare it unconstitutional. But I can't even do that in this case. If you look at the rulings and even the state board's position. Counsel, you're asking us, I think, to decide the constitutionality of the statute, go beyond the preemption issue and into the... I disagree. I think what I'm saying is that the preemption issue makes the statute unconstitutional. Are there other facts that ought to be in the record to make that decision in this case? In that there were no facts developed on the issue in the administrative agency? There are certainly... I don't know that I would say that, Your Honor, because if I'm asking you to say it's preempted, it's preempted by the words, not by the facts. The allegation was made before the state board regarding this. I guess my question is, if we were going to decide the constitutionality, is the record sufficient for us to do that? Second question, has there ever been a hearing at which they were developing the facts on the constitutional issue? And the answer to that, of course, is no. And I guess I'm back to the remand question. Remand is the second best alternative. The second best alternative. The problem with the remand that I see is that you are, again, you're creating, if you have to and if you think you need to, a sliver exception to the administrative review law and to Section 7.2b, which practitioners like myself, if they're real lucky and they read a lot, see it, find it in the appellate court decisions, follow it. But I think that when you see the basic problem that we have, what's going to happen the next time that somebody stumbles on a statute like this, where federal law may be inconsistent with this statute, maybe your decision will be read by the practitioners to say, well, then I guess we're going to be able to have this exceptional hearing before the administrative body or the circuit court. But I don't think that in view of the fact that one can look at the statute and say on its face, it can't allow the consideration of issues which the United States Constitution says must take supremacy. We can't allow this to happen. But I do, I'm not saying that you can't, you can do it, obviously, whatever you intend to. I think that's the less, second best alternative. Mr. Rathbun, if we assume that the legislature has the authority to grant the administrative body's authority to make these changes, or to take that away from the administrative body and put it to the courts, could we not also accept Mr. Puzak's argument that the legislature consciously allowed the minutia to be decided by the ISBA, that is the very technical factors on the percentage and the boundaries and those things, but left to the more important decision under 1703? The position is valid and consistent, Your Honor. One could simply say, well, they become gatekeeper number one. The fear and the problem is when the circuit court judge is asking now, he's got exception number one to the administrative review law, saying that in this case, however, you can hear evidence regarding these matters and you can weigh the evidence, you can decide what's going on in administrative review, you can make a decision on credibility, then you can make a decision on a law, and that can go up. Just as my opponent has suggested to you that this is the only statute in Illinois that prohibits the evidence before the administrative body from being developed, you will be doing the same thing so that in another day, some other lawyer will be sitting here and saying, the decision in this case creates the only circumstance and the only exception where you can hear evidence before administrative review. So we upset the entire logical statutory scheme by doing that. Then, I just don't, I think the law should be simple, come to court, present your evidence, have it heard. We create all these exceptions going left and right. Sometimes you have to. I appreciate that. This is one I don't think that we have to. If we have to, we have to. But I really think that no one should be sitting and having any type of a proceeding where you can't put on evidence. It doesn't take a genius to figure out there has to be some reason why we don't want people to hear what's in the best interest of the scheme and still is under Section 7.2, by the way. Any petitioner, if you throw this out, the Jacobs aren't without a remedy at all. The Jacobs can file a petition under 7.2, they're going presently before the regional board of school trustees, who'll make a decision. The state superintendent himself will get to rule on that, and then a disappointed party can go only on the record before a circuit judge and the appellate court and the Supreme Court. Is it your argument that because the 7.2b does not contain language referring to the best interest of the student, even if it were to allow the taking of evidence regarding the 17.03 requirements, it would be unconstitutional? I'm not sure I was following that. No, Your Honor. I'm not suggesting. I'm not going that far. What I'm saying is we probably, when we look at the way the facts are in this case, and we look at how complicated it has become already, I suggest we shouldn't make it even further complicated by carving these exceptions out. When the petition was filed, if the Jacobs or the Brookmans had a 13-year-old who wanted to go to Lincoln Way High School instead of my school, Joliet High School, that child today could actually be arguing before he was appointed because it's well over 10 years since the petition was filed. The procedures are already hopelessly and chronically complicated. All we're asking is to make them simple so that they'd be fair and they can be followed by normal practitioners. Justice McDade came up with a good decision. I suggest that this Court, since you have the handle on the case, you can do what you want. Make a great decision. If you have no other questions, I'm done. Thank you. Thank you, Mr. Rafton. Mr. Huzzard, rebuttal. Your Honors, I would like to answer some of the comments made by my opposing counsel and address some of the questions made by the Court. I return to the basic principle here that the appellate court here in District 204 had presented a false choice between the implementation of federal law and striking down Section 7.2.B. And that is not the only option. The other option is, we believe, the one that the legislature chose. And that is for this unique category of cases to take the claims that an order granting a petition under Section 7-2.B violate federal civil rights laws outside of the scope of the circuit court's administrative review jurisdiction and putting those into the circuit court's original jurisdiction. The sky won't fall if the Court holds that that is a proper interpretation of these statutes, or that if they are in conflict, that that is the way that they should be reconciled. The Rich Township case was out there. It already held that this is the way to go. Counsel, if we did that, would that open the possibility of ultimately doing precisely what we did in the Statute and Constitution? No, I don't think so. Oh, no, you're not understanding. If we started it over again at the circuit, I'm back to remand. Okay, yes. That could bring the case, the decision in the circuit court, a review by that decision in the appellate court, and ultimately a possible review by this Court. Well, there might be an argument that the application of that statute as applied to these unique circumstances would be unconstitutional because it violates the federal statute. But that's not striking down the statute on its face. I mean, that's essentially the type of issue that arises all the time. You know, whether it's under equal protection analysis or other laws, you can say that something violates due process as applied, but that leaves the statute on the books and leaves it to be implemented. And it leaves the State Board of Education's role clear, and it leaves the role of the circuit courts clear with respect to their respective responsibilities in cases like this. Well, Mr. Huzik, can you come up with another reason outside of, I'll use Mr. Rathbun's word, mischief as to why the administrative agency is not allowed to look at the facts? Yes, thank you for asking that question. I wanted to address it, and I'd like to take a minute to do so. First, the appellate court said that that was not the legislative intention. There was no evidence of that. There's been no record to that effect made. And I bristle at the suggestion that the court should automatically impute to the legislature some racially discriminatory purpose in the passage of this law. It is correct that the standard way to obtain detachments and annexations between school districts before adoption of 7.2b was through the general provision that looked to the educational welfare, and that included their whole educational welfare, not just their academic interests, and the impact upon their respective school districts. And there was much focus upon the community of interest tests. And I think the Peoria district, I'm sorry, there was a decision by this court in 1982 that emphasized the community of interest and whole child factors. But when you have a limited situation like this, where instead of going into this long, complicated, somewhat fuzzy set of factors that can take quite a while, and you have the fate of the children at stake, which school they're going to go to, who's going to get the tax revenues, there's a court challenge, then, you know, it stayed pending that court challenge. This was a category where they said, hey, we think community of interest can be pretty much, you know, determined, at least on a limited basis, by saying that you've got high school district and grade school district boundaries that are not coterminous. So children going to the same grade school don't go to the same high school. And the notion is typically in Illinois you have both unitary school districts and then separate school districts for the grade and high school levels, that if you could take very small parts of one school district and transfer it to another so that you align those boundaries and the students that go to the same grade school wind up going to the same high school, that's a completely permissible objective. It essentially says we don't have to get into community of interest, we don't have to get into the whole educational benefit to the child or the impact on the schools. In this limited category of circumstances, where the registered voters of that limited body of land by two-thirds majority say, please move our land from one school district to another, it was legitimate for the legislative assembly, the General Assembly to say, we don't need to get into this whole community of interest and whole educational child factors. There's nothing wrong with that determination. I do understand, although the constitutionality of statutes is normally determined on their face, there is, and this gets into arcane constitutional law, there's a limited category of cases in which the courts do look to whether the legislative body had a racially discriminatory purpose in passing the law. I don't think that this case is one where there's any pleading suggesting that, where there's any basis in the record to do so. I can't say as I stand here now that there should be an absolute prohibition upon the Juliet District 204 trying to make such a showing based upon proper pleadings and proof in the circuit court. But there's no basis for this court to seize upon the occasion and the invitation of opposing counsel to declare this statute unconstitutional because it has a discriminatory purpose. The issue before this case is whether it's on its face preempted by federal law, because it deprives parties who assert that a redistricting under this provision would frustrate their ability to obtain compliance with federal law, like the Equal Educational Opportunities Act. And the answer is there is no basis for this court to seize upon the issue of whether or not it's on its face preempted by federal law. And it makes sense, although it's hard to say that there's perfect harmony in the wisdom of the entire statute books, but it makes sense to say if those types of challenges are going to be raised and asserted, the State Board of Education is not the body in which you want to be deciding those questions. It's legitimate to say that the circuit courts should do so. And the invitation to strike down the statute as being illogical or unwise is unwarranted. That's not the role of this court. There was a question regarding the potential preclusive effect of the ISBE's decision, but if the only scope of that decision was to determine that the three statutory criteria under Section 7.2.B were met, then I submit that the scope of preclusion of that ruling would not bar a claim in this case or other cases, timely filed, that the decision nonetheless is in violation of federal civil rights laws, and those claims would be addressed and resolved under the circuit court's original jurisdiction. As to the remedy, I submit that the court should reverse and remand this matter to the circuit court for full development of any of the grounds that District 204 wants to raise to challenge this redistricting order by the State Board of Education as being in violation of federal civil rights laws. Again, the State Board of Education here is not a party to the dispute over whether the land should be moved or not. It just urges the court to say that it is not the person to decide the other issues, which are whether that is in violation of federal civil rights laws, based upon the meaning of the statutes that the court is being asked to interpret, and that would avoid even having to decide the preemption issue and the constitutionality of 7.2.B. Thank you, Your Honor. Thank you, Mr. Hosek, and thank you, Mr. Rathman. Case number 105-018, Board of Education Joliet Township v. Board of Education Linkaway, et al., is taken under advisement as agenda number 10.